1   ROB BONTA
    Attorney General of California
2   MARK R. BECKINGTON
    Supervising Deputy Attorney General
3   KEVIN J. KELLY
    Deputy Attorney General
4   State Bar No. 337425
      300 South Spring Street, Suite 1702
5     Los Angeles, CA 90013-1230
      Telephone: (213) 269-6615
6     E-mail: kevin.kelly@doj.ca.gov
    *Attorneys for Defendants Kimberly Kirchmeyer, in*
7   *her official capacity as Director of the California*
    *Department of Consumer Affairs, and Lynne Jensen,*
8   *in her official capacity as Bureau Chief of the*
    *Bureau of Security and Investigative Services*
9
                    IN THE UNITED STATES DISTRICT COURT
10
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12

13  **JOEL FINK,**                          3:23-cv-05921-RFL

14                          Plaintiff,

15          v.                              **NOTICE OF MOTION AND MOTION
                                            TO DISMISS**
16
    **KIMBERLY KIRCHMEYER, in her**         Date:        February 6, 2024
17  **official capacity as Director of the California**   Time:        10:00 a.m.
    **Department of Consumer Affairs; and**  Courtroom:   15
18  **LYNNE JENSEN, in her official capacity as**   Judge:       Rita F. Lin
    **Bureau Chief of the Bureau of Security and**   Trial Date:  None set
19  **Investigative Services,**             Action Filed: November 16, 2023

20                          Defendants.

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2      PLEASE TAKE NOTICE that on February 6, 2024, at 10:00 a.m., or as soon thereafter as

3    this matter may be heard in Courtroom 15 of the above-entitled Court, located at 450 Golden Gate

4    Ave., 18th Floor, San Francisco, California 94102, Defendants Kimberly Kirchmeyer, in her

5    official capacity as Director of the California Department of Consumer Affairs, and Lynne

6    Jensen, in her official capacity as Bureau Chief of the Bureau of Security and Investigative

7    Services, will and hereby do move this Court to dismiss this action under Federal Rules of Civil

8    Procedure 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief may

9    be granted.

10      This motion is based on this Notice of Motion and Motion; the accompanying

11    Memorandum of Points and Authorities; the accompanying request for judicial notice; all

12    pleadings and papers on file in this action; and such other matters as the Court may deem

13    appropriate. Counsel for Defendants conferred with opposing counsel and agreed that February 6,

14    2024 is a mutually convenient hearing date for the instant motion.

15    Dated: December 29, 2023                    Respectfully submitted,

16                                               ROB BONTA
                                                 Attorney General of California
17                                               MARK R. BECKINGTON
                                                 Supervising Deputy Attorney General
18

19

20                                               */s/ Kevin J. Kelly*
                                                 KEVIN J. KELLY
21                                               Deputy Attorney General
                                                 *Attorneys for Defendants*
22

23

24

25

26

27

28

1  ROB BONTA
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  KEVIN J. KELLY
   Deputy Attorney General
4  State Bar No. 337425
     300 South Spring Street, Suite 1702
5     Los Angeles, CA 90013-1230
      Telephone: (213) 269-6615
6     E-mail: kevin.kelly@doj.ca.gov
   *Attorneys for Defendants Kimberly Kirchmeyer, in*
7  *her official capacity as Director of the California*
   *Department of Consumer Affairs, and Lynne Jensen,*
8  *in her official capacity as Bureau Chief of the*
   *Bureau of Security and Investigative Services*

9

                IN THE UNITED STATES DISTRICT COURT
10
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12

13 | **JOEL FINK,**                                | 3:23-cv-05921-RFL |

14 |                                  Plaintiff,    | **MEMORANDUM OF POINTS AND** |
                                                   | **AUTHORITIES IN SUPPORT OF** |
15 |              **v.**                            | **MOTION TO DISMISS** |

16 |                                                | Date:          February 6, 2024 |
                                                   | Time:          10:00 a.m. |
17 | **KIMBERLY KIRCHMEYER, in her**                | Courtroom:     15 |
   | **official capacity as Director of the California** | Judge:      Rita F. Lin |
18 | **Department of Consumer Affairs; and**        | Trial Date:    None set |
   | **LYNNE JENSEN, in her official capacity as**  | Action Filed:  November 16, 2023 |
   | **Bureau Chief of the Bureau of Security and** |
19 | **Investigative Services,**                    |

20 |                                 Defendants.    |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Background ............................................................................................................ 1

    I.     State Regulation of Private Investigators and the California Private
          Investigators Act ...................................................................................... 1

    II.    Plaintiff's Business ................................................................................. 2

    III.   The Bureau's Enforcement of the Act Against Plaintiff........................... 3

    IV.   The Complaint .......................................................................................... 4

Legal Standard ...................................................................................................... 4

Argument ............................................................................................................... 4

    I.     Plaintiff's First Amendment Claim Fails As A Matter Of Law.............................. 4

          A.    The Regulation of Private Investigators is a Valid Exercise of the
               State's Police Powers. ................................................................. 4

          B.    The Act Does Not Burden Plaintiff's First Amendment Rights
               Because It Regulates Conduct With At Most An Incidental Impact
               on Speech. ..................................................................................... 5

          C.    Plaintiff's First Amendment Claim Would Also Fail as a Matter of
               Law Under the *Central Hudson* Test for Regulations of
               Commercial Speech. ..................................................................... 6

          D.    Even Under a Non-Commercial Speech Analysis, Intermediate
               Scrutiny Applies Because Enforcement of the Act Against Plaintiff
               is Content Neutral. ......................................................................... 9

    II.    Plaintiff's Substantive Due Process Claim Fails As A Matter Of Law. ............... 10

    III.   Plaintiff's Equal Protection Claim Fails As A Matter Of Law. ........................... 12

    IV.   Plaintiff's Privileges Or Immunities Claim Fails As A Matter Of Law. .............. 13

Conclusion ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

CASES

*Ariix, LLC v. NutriSearch Corp.*
985 F.3d 1107 (9th Cir. 2021) ........................................................................... 7

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................... 4, 11

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ........................................................................................ 4

*Big Tyme Invests., L.L.C. v. Edwards*
985 F.3d 456 (5th Cir. 2021) ......................................................................... 12

*Central Hudson Gas & Electric Corp. v. Public Service Commission*
447 U.S. 557 (1980) ......................................................................... 1, 6, 7, 8

*City of Austin v. Reagan National Advertising of Austin, LLC*
596 U.S. 61 (2022) .......................................................................................... 9

*Corales v. Bennett*
567 F.3d 554 (9th Cir. 2009) ......................................................................... 10

*Daniels-Hall v. Nat'l Educ. Ass'n*
629 F.3d 992 (9th Cir. 2010) ........................................................................... 4

*Diamond Multimedia Sys., Inc. v. Super. Ct.*
19 Cal. 4th 1036 (1999) ................................................................................... 8

*Dittman v. California*
191 F.3d 1020 (9th Cir. 1999) ....................................................................... 10

*Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*
2021 WL 2554631 (S.D.N.Y. June 22, 2021) ........................................... 6, 12

*Enquist v. Or. Dep't of Agr.*
553 U.S. 591 (2008) ...................................................................................... 12

*Fla. Bar v. Went for It, Inc.*
515 U.S. 618 (1995) ...................................................................................... 12

*Gray v. Dep't of Pub. Safety*
248 A.3d 212 (Me. 2021) ................................................................................. 7

*Holder v. Humanitarian Law Project*
561 U.S. 1 (2010) ............................................................................................ 7

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Italian Colors Rest. v. Becerra*
   878 F.3d 1165 (9th Cir. 2018)..................................................................................... 8

4

5

*Nat'l Inst. of Family & Life Advocates v. Becerra*
   138 S. Ct. 2361 (2018) ............................................................................................... 5

6

*National Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*
   228 F.3d 1043 (9th Cir. 2000)................................................................................. 5, 9

7

8

*Navarro v. Block*
   250 F.3d 729 (9th Cir. 2001) ..................................................................................... 4

9

*Nunez v. City of Los Angeles*
   147 F.3d 867 (9th Cir. 1998)................................................................................... 10

10

11

*Ohralik v. Ohio State Bar Ass'n*
   436 U.S. 447 (1978)................................................................................................... 5

12

13

*Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*
   961 F.3d 1062 (9th Cir. 2020)................................................................................. 8, 9

14

*Pharm. Care Mgmt. Ass'n v. Rowe*
   429 F.3d 294 (1st Cir. 2005)...................................................................................... 7

15

16

*Romero-Ochoa v. Holder*
   712 F.3d 1328 (9th Cir. 2013)................................................................................. 10

17

18

*Sorrell v. IMS Health Inc.*
   564 U.S. 552 (2011)................................................................................................... 5

19

*Thomas v. Collins*
   323 U.S. 516 (1945) (Jackson, J., concurring)........................................................... 5

20

21

*Tingley v. Ferguson*
   47 F.4th 1005 (9th Cir. 2022)........................................................................... 5, 6, 10

22

23

*United States v. Moore*
   543 F.3d 891 (7th Cir. 2008)................................................................................... 13

24

*United States v. Quintero*
   995 F.3d 1044 (9th Cir. 2021)................................................................................. 10

25

26

*Upsolve Inc. v. James*
   No. 22-cv-627 (PAC), 2022 WL 1639554 (S.D.N.Y. May 24, 2022).......................... 7

27

28

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3

*Vasquez v. Super. Ct.*
    4 Cal. 3d 800 (1971) ................................................................. 8

4

*Vill. of Willowbrook v. Olech*
    528 U.S. 562 (2000) ............................................................... 12

5
6

**STATUTES**

7

Cal. Bus. & Prof. Code § 145 .......................................................... 7

8

Cal. Bus. & Prof. Code § 480 .......................................................... 2

9

Cal. Bus. & Prof. Code § 7520 .................................................. 3, 6, 8

10

Cal. Bus. & Prof. Code § 7521 .................................................... 2, 3

11

Cal. Bus. & Prof. Code § 7521 ....................................................... 13

12

Cal. Bus. & Prof. Code § 7526 ........................................................ 2

13

Cal. Bus. & Prof. Code § 7541 ........................................................ 2

14

Cal. Bus. & Prof. Code § 7541.1 ..................................................... 2

15

Cal. Bus. & Prof. Code §§ 17529 *et seq.* ........................................ 3

16

Cal. Code Regs. tit. 16, § 605 ......................................................... 2

17

**CONSTITUTIONAL PROVISIONS**

18

First Amendment ........................................................................ *passim*

19

Fourteenth Amendment ............................................................... 1, 4

20

**COURT RULES**

21

Federal Rules of Civil Procedure 12(b)(6) ...................................... 2, 4

22
23
24
25
26
27
28

iv

**INTRODUCTION**

Plaintiff purports to engage in a business in which his clients provide him access to their email accounts. Plaintiff then identifies emails as legally "actionable" under California's Anti-Spam Act and transmits that information to his clients. California's Bureau of Security and Investigative Services (the "Bureau") cited Plaintiff for violating the California Private Investigator Act (the "Act") and directed him to cease and desist from unlawfully acting as an unlicensed private investigator.

Plaintiff now challenges the constitutional basis for any future enforcement of the Act against him, but Plaintiff's claims all fail as a matter of law. First, Plaintiff claims that enforcement of the Act violates his First Amendment rights, but such enforcement is a permissible regulation of his professional conduct that only incidentally regulates his speech. To the extent it does regulate any protected speech, it regulates his commercial speech, which is properly regulated under the Supreme Court's *Central Hudson* test. Plaintiff's Fourteenth Amendment substantive due process claim similarly fails because enforcement of the Act is rationally related to promoting Plaintiff's own fitness and competency to perform his work and conduct his business effectively and responsibly, as well as the state's legitimate interests in protecting consumers and their privacy interests, ensuring the reliability of evidence presented in judicial proceedings, and protecting the integrity of the judicial system. His Fourteenth Amendment equal protection claim fails because he fails to identify a protected class, and his privileges or immunities claim fails because, as he admits, it is barred under binding precedent. This Court should dismiss the complaint in its entirety.

**BACKGROUND**

**I.    STATE REGULATION OF PRIVATE INVESTIGATORS AND THE CALIFORNIA PRIVATE INVESTIGATORS ACT**

Relevant to Plaintiff's claims, a "private investigator" under the Act includes anyone "who, for any consideration whatsoever engages in business or accepts employment to furnish, or agrees to make, or makes, any investigation for the purpose of obtaining information" with reference to:

1

(b) The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation, or character of any person. . . . (d) The cause or responsibility for fires, libels, losses, accidents, or damage or injury to persons or to property. . . . [or] (e) Securing evidence to be used before any court, board, officer, or investigating committee.

Cal. Bus. & Prof. Code § 7521. In order to obtain a private investigator license, an individual must, among other things, be at least 18 years old and not have committed acts or crimes warranting denial of licensure (*id.* § 7526),[1] pass an examination that "determine[s] the ability and fitness of the applicant to engage in business" as a private investigator (Cal. Code Regs. tit. 16, § 605), and have at least three years' experience in investigation work, with at least 2,000 hours of actual compensated work per year (Cal. Bus. & Prof. Code § 7541(a)). The experience requirement may be satisfied by working for three years as an employee of a licensed private investigator or by working in various other capacities, such as a sworn law enforcement or military police officer, insurance adjuster, investigator employed by a public defender, or investigative reporter. *See* Cal. Bus. & Prof. Code § 7541.1(a).

As the California Legislature observed in considering certain amendments to the Act in 2017, private investigators "play a unique role in that their job is to delve into an individual's personal information, history, and behavior" and "have a unique ability [to] interact with consumers' sensitive information." Defendants' Request for Judicial Notice in Support of Motion to Dismiss, Exh. A, at 8. Moreover, the "ability to suspend, revoke, or deny a private investigator's license provides the [Bureau] with some ability to protect consumers and respond to complaints from consumers regarding a licensee." *Id.* at 7-8.

## II.   PLAINTIFF'S BUSINESS

As alleged in his Complaint, Plaintiff operates a business called "Spam Private Eye." Complaint ¶ 19. In the course of his business, Plaintiff's clients grant him access to their email

---

[1] Such crimes include those an applicant has been convicted of during the preceding seven years from the date of application that are substantially related to the qualifications, functions, or duties of private investigator work; serious felonies; and certain felony financial crimes. *See* Cal. Bus. & Prof. Code §§ 480, 7526.

accounts and he and a team of three contractors review the junk and spam folders to identify external emails that may violate the California Anti-Spam Act, Cal. Bus. & Prof. Code §§ 17529 *et seq.* Complaint ¶¶ 19, 20, 24. After Plaintiff and his team identify emails that potentially violate state law, Plaintiff lists them in spreadsheets and creates PDF copies of the emails. Complaint ¶ 25. His clients may then hire California attorneys and sue spammers under the Anti-Spam Act's private right of action. Complaint ¶¶ 16, 26. Plaintiff has advertised his services on a business website and on a Facebook page. Complaint ¶ 21.

### III.   THE BUREAU'S ENFORCEMENT OF THE ACT AGAINST PLAINTIFF

On July 13, 2023, the Bureau informed Plaintiff that it was investigating him for violating the Act. Complaint ¶ 34. Plaintiff explained his business model to a Bureau representative in a phone call and the representative sent Plaintiff an email memorializing their conversation. Complaint ¶¶ 35-36 & Exh. 1. That email stated, among other things, that (1) Plaintiff reviewed client email account information to determine if they had received spam emails; (2) Plaintiff's clients provided his findings to their attorneys or attorneys he referred them to; and (3) Plaintiff contracted with clients to receive 30% of the funds recovered from a client's successful lawsuit. *See id.* ¶ 37 & Exh. 1, at 2. The email further informed Plaintiff that he was conducting private investigations for which a license was necessary and directed Plaintiff to review Business and Professions Code sections 7521(b) and (e). *Id.*, Exh. 1, at 2.

On September 20, 2023, the Bureau issued a Citation Order to Plaintiff. *Id.* ¶ 46 & Exh. 2. The Citation Order stated that "[a]s a result of a bureau investigation, it was discovered that Spam Private Eye and [Plaintiff] advertises private investigator services on spamprivateeye.com and Facebook page without a current and valid license issued by the Bureau." *Id.*, Exh. 2, at 1. The Citation Order included an Order of Abatement directing Spam Private Eye and Plaintiff to "immediately cease and desist" from violating Business and Professions Code section 7520. *Id.* Plaintiff paid the $1,000 administrative fine and stopped conveying information to his clients about their emails, stopped accepting new clients, and took down his business's Facebook page. Complaint ¶¶ 54-57. He filed the Complaint on November 16, 2023. *See* ECF No. 1.

3

1

**IV.   THE COMPLAINT**

2
Plaintiff alleges that the Bureau's enforcement of the Act against him violates his First

3
Amendment "right to identify spam emails, regardless of his charging a fee for that speech" and

4
constitutes a content-based regulation of pure speech without appropriate justification. Complaint

5
¶¶ 83-92. He claims it further violates his substantive due process right to "earn a living in the

6
occupation of a person's choice subject to rational government regulation" under the Fourteenth

7
Amendment. *Id.* ¶¶ 93-104. He claims it violates his Fourteenth Amendment equal protection

8
rights because he is "similarly situated to a personal assistant or secretary" who is not obligated to

9
obtain a license to do their work. *Id.* ¶¶ 105-112. Lastly, he claims that it violates his right under

10
the Fourteenth Amendment's privileges or immunities clause, although he admits that claim is

11
barred under Supreme Court precedent. *Id.* ¶¶ 113-116.

12

**LEGAL STANDARD**

13
A complaint may be dismissed for failure to state a claim upon which relief can be granted.

14
Fed. R. Civ. P. 12(b)(6). Dismissal is proper where there is no cognizable legal theory or there are

15
insufficient facts alleged to support a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729,

16
732 (9th Cir. 2001). To defeat a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient to

17
"raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

18
555 (2007). In deciding a Rule 12(b)(6) motion, a court must assume the plaintiff's allegations of

19
fact are true and must draw all reasonable inferences in their favor. See *Daniels-Hall v. Nat'l*

20
*Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, "the tenet that a court must accept as

21
true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*

22
*v. Iqbal*, 556 U.S. 662, 678 (2009).

23

**ARGUMENT**

24

**I.   PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS AS A MATTER OF LAW.**

25

    **A.   The Regulation of Private Investigators is a Valid Exercise of the State's Police Powers.**

26

27
The Supreme Court and the Ninth Circuit have long recognized that states may validly

28
impose licensing requirements on persons engaged in certain activities, notwithstanding the First

4

Amendment. *See National Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1053 (9th Cir. 2000) ("*NAAP*") ("The Supreme Court has held that 'it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) (holding that "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity"). Indeed, a content-neutral licensing scheme may be a valid exercise of the state's police power "[a]lthough some speech interests may be implicated." *NAAP* at 1056; *accord Tingley v. Ferguson*, 47 F.4th 1005, 1076 (9th Cir. 2022), *pet'n for rehearing or rehearing en banc denied*, 57 F.4th 1072 (9th Cir. 2023).

Here, California has an interest in shielding the public from "the untrustworthy, the incompetent, or the irresponsible" (*Thomas v. Collins*, 323 U.S. 516, 544 (1945) (Jackson, J., concurring)) by requiring that persons engaged in the practice of private investigation have the requisite education, experience, and knowledge, and to provide a means of oversight and accountability over them (*cf. Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2373-74 (2018) ("*NIFLA*")) (holding that the law at issue in that case was not a regulation of professional conduct)).

**B.    The Act Does Not Burden Plaintiff's First Amendment Rights Because It Regulates Conduct With At Most An Incidental Impact on Speech.**

The Supreme Court has observed that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech" (*Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011)) and the Ninth Circuit has likewise held that "the state's power to regulate [professional conduct] is 'great' even though this type of regulation 'may have an incidental effect on speech'" (*Tingley*, 47 F.4th at 1072 (quoting *Pickup v. Brown*, 740 F.3d 1208, 1227 (9th Cir. 2014), *abrogated on other grounds by NIFLA*, 138 S. Ct. 2361)). In *Tingley*, the Ninth Circuit held that Washington's law prohibiting licensed therapists from performing "conversion therapy" on minors "regulated only treatment, and any effect on free speech interests

5

is merely incidental." 47 F.4th at 1073 (cleaned up). As such, the law was subject to rational basis review, and the law was "rationally related to the legitimate government interest of protecting the well-being of minors." *Id*. (quoting *Pickup v. Brown,* 740 F.3d at 1232).

Here, Plaintiff is in the business of reviewing emails within his client's email accounts, creating spreadsheets and PDF copies of emails that he believes may violate the Anti-Spam Act, and sharing them with his clients. Plaintiff alleges that "by telling [him] to not 'review [a] client's email account information' without being licensed, Defendants are engaged in the content-based regulation of pure speech." Complaint ¶ 86. But this allegation incorrectly frames the nature of the restriction—Plaintiff is not an unlicensed "private investigator" under the Act by virtue of any speech, but because he, for consideration, engages in business to furnish and make investigations for the purpose of obtaining certain types of information, without a license to do so. *See* Cal. Bus. & Prof. Code §§ 7520, 7521. The Act is thus properly understood as limiting professional conduct, and any resulting burden on speech is merely incidental. *See Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, 2021 WL 2554631, at \*30 (S.D.N.Y. June 22, 2021) (distinguishing between Virginia private investigator statute's focus on an unlicensed business's offer to undertake private investigator services and the counterparty's actual use of the information provided). Indeed, Plaintiff remains free to express his views on any subject. Because enforcement of the Act against Plaintiff regulates his professional conduct with only an incidental impact on his speech, and because it easily satisfies rational basis review (*see* Section III, *infra*), his First Amendment claim necessarily fails.

**C.    Plaintiff's First Amendment Claim Would Also Fail as a Matter of Law Under the *Central Hudson* Test for Regulations of Commercial Speech.**

Even assuming the Bureau's enforcement of the Act against Plaintiff regulates his "speech," that speech could only be categorized as commercial, and Plaintiff's First Amendment claim fails as a matter of law under the test for restrictions of commercial speech established in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980).

1    **1.     To the extent the Act regulates "speech," it regulates Plaintiff's
2              commercial speech.**

3        "[C]ommercial speech is usually defined as "speech that does no more than propose a

4    commercial transaction," but this definition is "just a starting point." *Ariix, LLC v. NutriSearch*

5    *Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (citations omitted). Courts try to make "a 'common-

6    sense distinction' between commercial speech and other varieties of speech." *Id. See Pharm.*

7    *Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 309 (1st Cir. 2005) (defining commercial speech as

8    "expression related solely to the economic interests of the speaker and its audience").

9        Here, Plaintiff's interest in his investigative activities is commercial. He is not engaged in

10   political, religious, or philosophical discourse. Nor are his motives humanitarian. *Cf. Holder v.*

11   *Humanitarian Law Project*, 561 U.S. 1, 21-22 (2010) (non-profit speaking on humanitarian and

12   political issues); *Upsolve Inc. v. James,* No. 22-cv-627 (PAC), 2022 WL 1639554 (S.D.N.Y. May

13   24, 2022) (unpaid volunteers helping the poor deal with debt collectors). Thus, even assuming

14   Plaintiff's professional conduct could be considered "speech," it is solely commercial speech, and

15   any restriction on it is subject to the *Central Hudson* test.

16   **2.     Enforcement of the Act against Plaintiff satisfies the *Central Hudson*
17            test.**

18       Assuming that Plaintiff's speech concerns lawful activity and is not misleading,

19   enforcement of the Act against Plaintiff satisfies the *Central Hudson* test. First, California has a

20   substantial interest in protecting consumers from unlicensed activity. The state has declared that

21   "[u]nlicensed activity in the professions and vocations regulated by the Department of Consumer

22   Affairs is a threat to the health, welfare, and safety of the people of the State of California." Cal.

23   Bus. & Prof. Code § 145(a); *see also Gray v. Dep't of Pub. Safety*, 248 A.3d 212, 222 (Me.

24   2021), *cert. denied*, 142 S.Ct. 350 (2021) ("The government has a significant interest in

25   maintaining standards of good character and competency for those who investigate and report on

26   the intimate details of others' lives."). The Bureau can act to protect consumers from the willful

27   misconduct and negligence of licensed private investigators by disciplining them, suspending

28   their licenses, or even revoking them. That oversight is lacking to the extent that unlicensed,

7

1   untrained, and incompetent persons are permitted to engage in private investigations for profit,

2   without the oversight to which licensees are subject. California also has a compelling interest in

3   proscribing the advertising of services that are false or misleading, and preventing deceptive

4   practices generally. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1064 (1999);

5   *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971).

6          The State's interest is especially acute in the circumstances of this case, where Plaintiff

7   seeks declaratory and injunctive relief as to "Defendants' future enforcement of California's

8   private investigator laws and the regulations promulgated under the private investigator laws" as

9   applied to him. Complaint at 16 (Request for Relief). Such relief would allow Plaintiff complete

10  freedom to engage in unlicensed activity, and prohibit state regulators from stepping in to protect

11  vulnerable consumers, no matter how egregious his conduct.

12         Enforcement of the Act against Plaintiff also satisfies the third prong of the *Central Hudson*

13  test. The Act, and the Bureau's enforcement of it, directly advances the State's asserted interest

14  in—and the Bureau's mission of—protecting the public against persons and entities that offer

15  illegal and unlicensed services and ensuring their professional competence. Any resulting

16  restriction on Plaintiff's speech entailed by application of the law will alleviate those harms to a

17  material degree. "To be effective, the government must have the power to maintain *public safety*

18  *and order, and this requires the government to regulate aspects of our lives.*" *Pac. Coast*

19  *Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1070 (9th Cir. 2020) (emphasis added).

20         Finally, the fourth prong of the *Central Hudson* test requires that the restriction on speech

21  be "not more than necessary to serve the interests that support it." *Italian Colors Rest. v. Becerra*,

22  878 F.3d 1165, 1178 (9th Cir. 2018). To satisfy this test, "California is not required to employ the

23  least restrictive means conceivable, but it must demonstrate narrow tailoring of the challenged

24  regulation to the asserted interest, or, in other words, a reasonable fit." *Id.* (citation omitted).

25  Here, enforcement of the Act against Plaintiff is narrowly tailored. It would only penalize

26  Plaintiff for violating section 7520 of the Act (*see* Complaint, Exh. 2, at 1) and he would remain

27  free to engage in communicative activity that does not otherwise constitute acting as an

28  unlicensed private investigator under the statute.

8

**D.    Even Under a Non-Commercial Speech Analysis, Intermediate Scrutiny Applies Because Enforcement of the Act Against Plaintiff is Content Neutral.**

Even if enforcement of the Act against Plaintiff could be deemed to restrict speech that is not commercial, it would still pass constitutional muster because it is content neutral and therefore subject to intermediate scrutiny, which it passes as a matter of law. Defendants respectfully submit that the Ninth Circuit decision in *NAAP*, 228 F.3d 1043, is dispositive. The *NAAP* Court held that the licensing scheme for psychoanalysts was content and viewpoint neutral. *Id*. at 1055. "Although the California laws and regulations may require certain training, speech is not being suppressed based on its message. . . . The licensing scheme . . . was not adopted because of any disagreement with psychoanalytical theories. It was adopted for the important purpose of protecting public health, safety, and welfare." *Id*. Here, too, the Bureau has not restricted any of Plaintiff's speech based on message but has simply required that he meet certain experience and licensing requirements. Thus, this case is unlike *Pacific Coast Horseshoeing School v. Kirchmeyer*, 961 F.3d 1062 (9th Cir. 2020), where the Ninth Circuit held that the particular law at issue "*favors* particular kinds of speech and particular speakers through an extensive set of exemptions," and for that reason was content-based. *Pac. Coast Horseshoeing Sch.*, 961 F.3d at 1072.[2] Here, the Act applies broadly to Plaintiff and all other persons engaged in the business of private investigation.

Determining whether the Act applies to Plaintiff may require someone to analyze whether his specific business activities fall within the Act's definition of a "private investigator," but that does not make the law "content-based." In *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022), the Supreme Court held that a sign regulation was not content-based simply because the law would require a reader to ask, "who is the speaker and what is the speaker saying." *Reagan*, 596 U.S. at 69. "This Court's First Amendment precedents and doctrines have consistently recognized that restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral." *Id*. at 72.

___

[2] The Court remanded to the district court to decide whether the statute regulated commercial speech, in which case intermediate scrutiny would apply. *Id*. at 1073-74.

9

1    Plaintiff alleges that his business activities are entitled to First Amendment protection

2    because they involve receiving, reading, repackaging, and sharing information. *See, e.g.,*

3    Complaint ¶ 83. Every profession—medicine, law, engineering, architecture—inevitably involves

4    the conveying of information. *See, e.g., Tingley*, 47 F.4th at 1073. If the Bureau's enforcement of

5    the Act were held to be a content-based regulation of speech, under the same principle, no state or

6    government regulation of any profession would survive unless it could meet the heavy burden of

7    strict scrutiny—a standard not required by Supreme Court or Ninth Circuit authority.

8    **II.    PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM FAILS AS A MATTER OF LAW.**

9    Plaintiff's claim that enforcement of the Act against him violates his substantive due

10   process rights to earn a living (Complaint ¶¶ 93-104) similarly fails as a matter of law.

11   "[S]ubstantive due process prevents the government from engaging in conduct that shocks the

12   conscience, or interferes with rights implicit in the concept of ordered liberty." *United States v.*

13   *Quintero*, 995 F.3d 1044, 1051-52 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S.

14   739, 746 (1987)); *see also Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009); *Nunez v. City of*

15   *Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Absent circumstances triggering a higher level of

16   scrutiny, which Plaintiff does not allege for purposes of his substantive due process claim, a

17   challenged statute is subject to rational basis review. *Romero-Ochoa v. Holder*, 712 F.3d 1328,

18   1331 (9th Cir. 2013). "Such review does not provide 'a license for courts to judge the wisdom,

19   fairness, or logic of legislative choices.' " *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S.

20   307, 313 (1993)). In the context of regulating entry into a profession, "any such regulation must

21   be rationally related, not merely to a legitimate state interest, but more specifically to the 'the

22   applicant's fitness or capacity to practice' the profession itself." *Dittman v. California*, 191 F.3d

23   1020, 1030-31 (9th Cir. 1999) (citing *Schware v. Board of Bar Exam'rs*, 353 U.S. 232, 239

24   (1957)).

25   In an attempt to support his substantive due process claim, Plaintiff alleges in broad,

26   conclusory terms that his business is so dissimilar from "conventional private investigations" that

27   "any government's interest in regulating private investigators is not implicated." Complaint ¶ 96.

28   He tersely alleges that "[r]equiring [Plaintiff] to be licensed as a private investigator would not

10

protect the public" (*id.* ¶ 101), and he focuses almost entirely on whether compliance with statutory requirements would establish his competency to identify legally actionable spam (*see id.* ¶¶ 97-98 (alleging that "learning to identify actionable spam" takes "hours of training at most" and "does not take three years")), *id.* ¶ 99 ("None of the fields in which Defendants require training have any meaningful connection to identifying spam emails."); *id.* ¶ 100 ("The exam that [Plaintiff] would undergo does not test anything about spam email."); *see also id.* ¶ 89). Plaintiff does not support these conclusions with any factual matter regarding, for example, the nature of "conventional" private investigator training or work or the content of the Bureau's examinations, and the Court should thus disregard them. *See Iqbal*, 556 U.S. at 678.

But even so, competence to identify a potential violation of law represents only a fraction of what private investigator licensing requirements ensure, and compliance with California's licensing requirements would in fact further Plaintiff's fitness and competency to conduct his investigations effectively, efficiently, responsibly, and with a view to protecting his clients, the public, and himself. For example, requiring Plaintiff to obtain the requisite experience by working under a licensed private investigator—even if doing so does not involve any identification of spam emails—is rationally related to enhancing his ability to effectively communicate with his clients, understand their needs, develop investigation plans, and avoid client investigative requests that are illegal or unethical. *See* Complaint ¶¶ 23, 24, 25. To the extent he investigates his client's email accounts to identify evidence for use in judicial proceedings (*see id.* ¶¶ 26, 28), passing an appropriate examination and gaining the requisite experience is rationally related to ensuring his understanding of those proceedings, evidence preservation requirements, chain of custody methods, and how to appropriately respond to subpoenas and court orders and testify about his findings and investigative methods if called to do so. The nature of Plaintiff's business involves obtaining access to the sensitive communications of both his clients and the senders of emails in his client's inboxes (*see id.* ¶ 24, 25)—who may include other members of the public who are unaware that a team of third parties has been granted access to potentially confidential emails primarily intended for the eyes of Plaintiff's clients. Proper investigatory experience and examination would ensure that Plaintiff understands laws concerning privacy rights, personal

11

information, and disclosure of public and non-public information. *See Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, 2021 WL 2554631, at *25 (S.D.N.Y. June 22, 2021) (examining Virginia private investigator statute and concluding that "to review confidential and not readily accessible information . . . is the stuff of private investigatory work, not mere research"). And to the extent Plaintiff is the owner and manager of his own business (*see* Complaint ¶¶ 19, 20), it would ensure he understands laws concerning advertising and solicitation, employee compensation, fee agreements, and employment and termination requirements.

In sum, requiring Plaintiff to comply with these requirements bears a direct relation to ensuring that he has the comprehensive competence and fitness to successfully and responsibly engage in his business, far beyond his ability to "identify spam emails." And it would concurrently serve the state's interests in protecting consumers, the privacy interests of the general public, the reliability of evidence, and the integrity of the judicial system. *See Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 625 (1995) ("States have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." (quotation marks omitted)).

### III.  PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS AS A MATTER OF LAW.

An equal protection claim arises only when, as relevant here, a regulation treats one class of persons different from others who are similarly situated. Absent a fundamental right or suspect class—which plaintiff has not alleged—the law or restriction is subject to highly deferential rational basis scrutiny. *Big Tyme Invests., L.L.C. v. Edwards*, 985 F.3d 456, 468 (5th Cir. 2021).

But Plaintiff's claim fails under any standard. Plaintiff does not allege that he is a member of a protected class, so his equal protection claim could only rest on a "class-of-one" theory, which requires plausible allegations that plaintiff has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Enquist v. Or. Dep't of Agr.*, 553 U.S. 591, 601 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff would have to allege facts showing a high degree of similarity between him and those he claims received better treatment. *United States v. Moore*, 543 F.3d 891, 896 (7th Cir.

12

1  2008). To be similarly situated, "the class-of-one challenger and his comparators must be 'prima

2  facie identical in all relevant respects or directly comparable . . . in all material respects.'" *Id*. at

3  896.

4  The Complaint alleges that plaintiff is similarly situated to "personal assistants and

5  secretaries" who "often read another person's emails and then convey information from those

6  emails to that person." Complaint ¶ 107. But the Act would not exempt those who, for example,

7  read or convey such information for purposes of an "investigation" into a person's activity or

8  conduct (*see* Cal. Bus. & Prof. Code § 7521(b)), determine "the cause or responsibility" of

9  "damage or injury" to a person by virtue of violating California's Anti-Spam Laws (*see* Cal. Bus.

10  & Prof. Code § 7521(d)), or secure emails and information for the purpose of presenting them as

11  evidence in future court proceedings (*see id*. § 7521(e)). And Plaintiff has not alleged the specific

12  facts that would be required to state a claim under the "class of one" theory, since he has not

13  alleged that the Bureau does not enforce the Act against other non-licensed persons who engage

14  in the practice of private investigation. His equal protection claim should be dismissed.

15  **IV.   PLAINTIFF'S PRIVILEGES OR IMMUNITIES CLAIM FAILS AS A MATTER OF LAW.**

16  Lastly, Plaintiff purports to bring a claim under the Fourteenth Amendment's privileges or

17  immunities clause (Complaint ¶¶ 113-116) but "recognizes that this claim is foreclosed by

18  *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873)" (Complaint ¶ 116). While Plaintiff alludes

19  to scholarly disagreement over whether *Slaughter-House* was correctly decided (*see id*.), it

20  remains binding precedent, and this Court should therefore dismiss his rivileges or Immunities

21  claim.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

The Court should dismiss the Complaint because it fails to state a claim upon which relief may be granted.

Dated: December 29, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Kevin J. Kelly*
KEVIN J. KELLY
Deputy Attorney General
*Attorneys for Defendants Kimberly Kirchmeyer, in her official capacity as Director of the California Department of Consumer Affairs, and Lynne Jensen, in her official capacity as Bureau Chief of the Bureau of Security and Investigative Services*

SA2023306140
66474547.docx

14