UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL FINK,<br><br>       Plaintiff,<br><br>    v.<br><br>KIMBERLY KIRCHMEYER, et al.,<br><br>       Defendants. | Case No. 23-cv-05921-RFL<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 15, 18 |

      Joel Fink operates a business called "Spam Private Eye" where he reviews his clients' "junk" emails and identifies ones that might violate California's anti-spam law.  In July 2023, the California Bureau of Security and Investigative Securities (the "Bureau") cited Fink for acting as an unlicensed private investigator.  Fink brings this action for violation of his constitutional rights to free speech, due process, and equal protection, as well as his rights under the Privileges or Immunities Clause, against Kimberly Kirchmeyer, the Director of the California Department of Consumer Affairs, and Lynne Jensen, the Chief of the Bureau.

      Fink's motion for a preliminary injunction based on violation of his constitutional rights to free speech and due process is **GRANTED**.  California's licensing regime for private investigators is a content- and viewpoint-neutral regulation of professional conduct.  As such, the licensing regime is subject to rational basis review, requiring only a showing that the licensing requirements are rationally related to Fink's fitness to conduct his business.  That is a low bar.  Fink has adequately shown, however, that the private investigator licensure law fails to clear that low bar as applied to him.  Specifically, he has shown a gross mismatch between the highly

1

burdensome requirements of the licensing regime, which require him to undertake 6,000 hours of largely unrelated training, and the State's marginal interest in regulating his review of his clients' "junk" emails, which are highly unlikely to be sensitive.

The defendants' motion to dismiss is **DENIED** as to Fink's First Amendment and due process claims for the same reasons. However, the motion to dismiss Fink's equal protection claim and Privileges or Immunities claim is **GRANTED**. Unlike his due process claim, Fink's equal protection claim rests on an allegation that the licensing law impermissibly distinguishes between individuals who review others' emails for potential litigation and those who review emails for other reasons. The Legislature rationally drew that distinction based on legitimate state interests such as preserving the integrity of litigation evidence and protecting privacy. As for Fink's Privileges or Immunities claim, that claim is foreclosed by Supreme Court precedent, as Fink concedes in his complaint and opposition brief.

I.   BACKGROUND

Under California law, individuals may sue companies for sending certain types of spam emails and receive liquidated damages of $1,000 for each unsolicited email that violates the law. (Dkt. No. 1 ("Compl.") ¶¶ 16–18.) In 2011, Fink started his business, Spam Private Eye, in which his clients grant him access to their email accounts, and he and his team review the junk or spam folders for emails that may violate California's anti-spam law. (*Id.* ¶¶ 23–24.) After Fink completes his review, he provides his clients with a spreadsheet of the potentially offending emails and PDF copies of those emails. (*Id.* ¶ 25.) His clients may then hire attorneys to bring civil suits against the spammers, and under Fink's agreement with his clients, he is entitled to 30 percent of any recovery from the suits. (*Id.* ¶¶ 26, 37.)

In July 2023, the Bureau contacted Fink and informed him that he was under investigation for practicing private investigation without a license. (*Id.* ¶¶ 33–37.) California defines a private investigator as "a person, other than an insurance adjuster . . . , who, for any consideration whatsoever engages in business or accepts employment to furnish or agrees to furnish any person to protect persons pursuant to Section 7521.5, or engages in business or

accepts employment to furnish, or agrees to make, or makes, any investigation for the purpose of obtaining, information with reference to:

>   (a) Crime or wrongs done or threatened against the United States of America or any state or territory of the United States of America.
>
>   (b) The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation, or character of any person.
>
>   (c) The location, disposition, or recovery of lost or stolen property.
>
>   (d) The cause or responsibility for fires, libels, losses, accidents, or damage or injury to persons or to property.
>
>   (e) Securing evidence to be used before any court, board, officer, or investigating committee."

Cal. Bus. & Prof. Code § 7521.  (Compl. ¶ 39.)

To become a licensed private investigator in California, a person must pass an examination and have at least three years (6,000 hours) of experience in "investigation work," Cal. Bus. & Prof. Code § 7541, which is limited to experience in the following capacities:

>   (1) Sworn law enforcement officers possessing powers of arrest and employed by agencies in the federal, state, or local government;
>
>   (2) Military police of the Armed Forces of the United States or the National Guard;
>
>   (3) An insurance adjuster or their employees subject to Chapter 1 (commencing with Section 14000) of Division 5 of the Insurance Code;
>
>   (4) Persons employed by a private investigator who are duly licensed in accordance with this chapter, or managed by a qualified manager in accordance with Section 7536;
>
>   (5) Persons employed by repossessors duly licensed in accordance with Chapter 11 (commencing with Section 7500), only to the extent that those persons are routinely and regularly engaged in the location of debtors or the location of personal property utilizing methods commonly known as "skip tracing";

>(6) Persons duly trained and certified as an arson investigator and employed by a public agency engaged in fire suppression;
>
>(7) Persons trained as investigators and employed by a public defender to conduct investigations;
>
>(8)(A) Persons trained as investigative reporters and employed by a media source, as defined in Section 1070 of the Evidence Code, whose investigative journalism experience is comprised of conducting primary investigations and producing investigative projects.

*Id.* at § 7541.1.

In September 2023, the Bureau formally cited Fink for practicing private investigation without a license, ordered him and Spam Private Eye to cease and desist from advertising private investigator services, and imposed a $1,000 administrative fine. (Compl. ¶¶ 46–50.) Fink paid the fine and has since stopped his business. (*Id.* ¶¶ 54–59.)

Fink now sues to enjoin the defendants from enforcing California's private investigator licensure law against him. He asserts claims for violations of the First Amendment and the Fourteenth Amendment's Due Process Clause, Equal Protection Clause, and Privileges or Immunities Clause. (*Id.* ¶¶ 83–116.)

## II. LEGAL STANDARD

### A. Motion for Preliminary Injunction

A "preliminary injunction is an extraordinary and drastic remedy" that should not be granted unless the movant shows "substantial proof" and, "*by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (internal quotation marks and citation omitted). To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit employs a sliding scale approach in weighing these factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The "[l]ikelihood of

success on the merits 'is the most important' *Winter* factor[.]" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)).

### B.      Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)).

The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.     DISCUSSION

### A.      Fink's Motion for a Preliminary Injunction

Fink moves for a preliminary injunction to stop the defendants from enforcing

California's private investigator licensure law against him. For the reasons set for below, the balance of the *Winter* factors tip in Fink's favor, and the motion for a preliminary injunction is granted.

### 1. Likelihood of Success on the Merits

The first *Winter* factor is whether the plaintiff has established that he is likely to succeed on the merits of his claims. Fink moves for preliminary injunctive relief on his claims for violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment.[1] The Court finds that Fink has shown he is likely to succeed on the merits of these two claims.

#### a. Applicable Level of Scrutiny

As a threshold matter, the Court must first determine what level of scrutiny to apply to Fink's constitutional claims. Rational basis review applies to both claims.

##### i. First Amendment

Fink contends that the private investigator licensure law, as applied to him, violates his free speech rights under the First Amendment. Specifically, he claims that application of the law to him impermissibly restricts his ability to read, create, and share information about his clients' emails. (Compl. ¶¶ 83–92.) The defendants assert that the licensure law is a regulation of professional conduct within the state's powers that at most incidentally involves speech. (Dkt. No. 19 ("PI Opp.") at 11–12.)[2]

The applicable standard for Fink's First Amendment claim depends on whether the licensure law is a regulation of conduct or speech. *See Pickup v. Brown*, 740 F.3d 1208, 1225 (9th Cir. 2014), *abrogated in part by Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018); *Tingley v. Ferguson*, 47 F.4th 1055, 1075 (9th Cir. 2022) ("*Pickup*'s approach survives for regulations of professional conduct."). "At one end of the continuum, where a professional is engaged in a public dialogue, First Amendment protection is at its greatest." *Pickup*, 740 F.3d at

---

[1] Fink's motion for preliminary injunction makes no mention of his claims for violations of the Fourteenth Amendment's Equal Protection Clause or Privileges or Immunities Clause.

[2] Page numbers refer to the ECF pagination.

1227. "At the other end of the continuum . . . is the regulation of professional *conduct*, where the state's power is great, even though such regulation may have an incidental effect on speech." *Id.* at 1229. Regulations of conduct that have an incidental effect on speech are subject to rational basis review. *See Tingley*, 47 F.4th at 1073.

The private investigator licensure law regulates conduct. The law imposes a licensing requirement on persons who, for consideration, furnish or make investigations, as defined by Cal. Bus. & Prof. Code § 7521. Private investigators fall under this licensing regime based on the investigative actions they take, such as securing evidence, following people around to determine their habits, digging through their trash, etc. Fink's business falls within the ambit of the licensure law because Fink "[s]ecur[ed] evidence to be used before any court" under Cal. Bus. & Prof. Code § 7521(e). (Compl. ¶¶ 39–40.) He accesses his clients' spam or junk e-mail folders and generates PDF copies of the potentially offending emails for use in potential lawsuits. (*Id.* ¶¶ 24–26.)

Contrary to Fink's argument, California's licensing regulations are not subject to heightened scrutiny merely because his business involves reading his client's emails and creating a spreadsheet that identifies potentially offending emails. Numerous professions—like medicine, psychotherapy, teaching, the law, or telemarketing—conduct their business through language, but the regulations and licensure requirements for those professions are not necessarily subject to heightened scrutiny because those who engage in those professions also happen to speak, read, and write at work. *See Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. Of Psychology* ("*NAAP*"), 228 F.3d 1043, 1054 (9th Cir. 2000) (rejecting proposition that therapists were entitled to special First Amendment protection because they "employ speech to treat their clients") (citations and internal quotation marks omitted); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra* ("*NIFLA*"), 585 U.S. 755, 770 (2018) (discussing the Supreme Court's rejection of a free-speech challenge to an informed-consent requirement in *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 883, 884 (1992), where "the joint opinion [in *Casey*] explained that the law regulated speech only 'as part of the *practice* of medicine, subject to

reasonable licensing and regulation by the State.'") (emphasis added in *NIFLA*). The private investigator licensure law regulates Fink's investigative conduct, not his speech, and its effect on his speech is incidental. As such, the law is subject to rational basis review, as applied to Fink.

*Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011), and *Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer*, 961 F.3d 1062 (9th Cir. 2020), on which the defendants rely, are not to the contrary. The laws at issue in those cases were subject to heightened scrutiny because the courts found they were not content and viewpoint neutral. In *Sorrell*, the Supreme Court invalidated a law that restricted the use of drug prescriber-identifying information because the law discriminated against pharmaceutical companies who wanted to use the information for marketing, but allowed others (such as academic organizations) to obtain the same information for educational communications. *Sorrell*, 564 U.S. at 563–64. The Court emphasized that the legislative history showed that Vermont wanted to reduce the effectiveness of marketing to prescribers by manufacturers of brand-name drugs, which evinced an intent to discriminate by viewpoint. *Id.* at 565. Similarly, in *Pacific Coast Horseshoeing School*, the Ninth Circuit held that a licensing restriction—requiring a private postsecondary school to reject students' applications if they did not have a high school diploma or GED or had not passed a certain federal exam—was subject to heightened scrutiny because the law "*favor[ed]* particular kinds of speech and particular speakers through an extensive set of exemptions." *Pacific Coast Horseshoeing School*, 961 F.3d at 1072 (emphasis in original). The law restricted schools offering classes in horseshoeing, but not those offering classes in test preparation, flight instruction, golf, or other topics, due to value judgments about the content of those courses. *Id.* at 1071. In both of these cases, the laws were ultimately determined to be content-based regulations on speech.

By contrast, the private investigator licensure law is content and viewpoint neutral. The applicability of the licensing requirement does not turn on who or what the specific subject of the investigation is. *NAAP*, in which the Ninth Circuit upheld California's licensing scheme for mental health professionals, is instructive. The court explained, "Nothing in the statutes prevents

8

licensed therapists from utilizing psychoanalytical methods or prevents unlicensed people from engaging in psychoanalysis if no fee is charged . . . . California does not dictate the content of what is said in therapy; the state merely determines who is qualified as a mental health professional." *NAAP*, 228 F.3d at 1055–56.

As in *NAAP*, Fink's alleged speech "is not being suppressed based on its message." *NAAP*, 228 F.3d at 1055.  Fink's emails with the defendants show that Fink was being investigated because he was "conducting private investigations of a person's private information, for a percentage of the recovery lawsuit, through a written contract, which are later used in a court to seek settlement." (Dkt. No. 15-2 at 3.)  The defendants are not regulating Fink because of any viewpoint or message he is expressing.  Rather, the defendants' concern is with his conduct as an unlicensed private investigator.   Indeed, Fink does not appear to dispute that he remains free to communicate with his clients about spam emails if he does not charge a fee. Therefore, unlike the laws in *Sorrell* and *Pacific Horseshoeing School*, the private investigator licensure law is not a content-based restriction on speech.

## ii. Substantive Due Process

The complaint alleges that the defendants prevented Fink from pursuing the occupation of his choosing by applying the private investigator licensure law to him. (Compl. ¶¶ 93–95.) The parties agree that that rational basis review applies to this claim.  (PI Mot. at 13; PI Opp. at 12.)  *See Dittman v. California*, 191 F.3d 1020, 1030–31 (9th Cir. 1999).

### b. Applying Rational Basis Review to the Licensure Law

Rational basis review applies to both Fink's claims for violation of the First Amendment and the Fourteenth Amendment's Due Process Clause.  Fink has demonstrated that he is likely to succeed in showing that the private investigator licensure law, as applied to him, fails this standard.  Although rational basis review is a low bar, Fink's situation presents an extreme mismatch between the State's interests and the burdens imposed on him, due to the unusually non-sensitive nature of his work.

"A law is presumed to be valid and will be sustained under rational basis review if it is

rationally related to a legitimate state interest." *Tingley*, 47 F.4th at 1078 (citations and internal quotation marks omitted). "The burden falls on the party seeking to disprove the rationality of the relationship between the classification and the purpose." *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007). In the context of regulating entry into a profession, "any such regulation must be rationally related, not merely to a legitimate state interest, but more specifically to the 'the applicant's fitness or capacity to practice' the profession itself." *Dittman*, 191 F.3d 1020, 1030–31 (9th Cir. 1999) (citing *Schware v. Board of Bar Exam'rs*, 353 U.S. 232, 239 (1957)). Although the rational basis standard is deferential, it is not "toothless." *Mathews v. Lucas*, 427 U.S. 495, 510 (1976).

There does not appear to be a dispute over whether the defendants' proffered interests—protecting consumers from unlicensed activity and deceptive practices, the privacy interests of the general public, the reliability of evidence, and the integrity of the judicial system (PI Opp. at 15, 19)—are legitimate. Rather, the parties dispute whether the application of the private investigator licensing requirement to Fink is rationally related to those interests.

The district court in *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999) addressed a similar as-applied constitutional challenge to a licensing scheme under California law, and the Court finds the reasoning in that case persuasive. The plaintiff in *Cornwell* was an African hair braider who asserted that she should be permitted to lock hair for compensation without fulfilling California's cosmetology licensing requirement. *Id.* at 1107. Becoming a licensed cosmetologist required undergoing a 1600-hour cosmetology curriculum and passing a licensing exam. *Id.* at 1119. In granting the plaintiff's motion for summary judgment on her Due Process and Equal Protection claims, the district court found that the plaintiff could not "reasonably be classified as a cosmetologist as it is defined and regulated presently," and "[e]ven if [she] were defined to be a cosmetologist, the licensing regimen would be irrational as applied to her because of her limited range of activities," which overlapped only minimally with the types of activities covered in the state's principal training curriculum and examination. *See id.* at 1108, 1110, 1115 (finding "well below ten percent" of the curriculum to be relevant to

10

the plaintiff's actual activities and 11 percent of exam questions to be relevant to her actual activities).

Here, Fink is likely to show that, as in *Cornwell*, the private investigator licensure law as applied to him would be irrational given the limited scope of his "investigative" activities. To become a licensed private investigator, Fink is required to have at least three years of experience in "investigation work," which is narrowly defined to include work as: (1) a sworn law enforcement officer; (2) military police; (3) an insurance adjuster; (4) a person employed by either a licensed private investigator; (5) a person employed by repossessors in limited capacities; (6) an arson investigator; (7) an investigator for a public defender; and (8) an investigative journalist. Cal. Bus. & Prof. Code § 7541.1. Fink would also have to pass an examination, which covers topics including: conducting interviews, asset searches, and surveillances; performing background checks and due diligence analyses; tracking individuals to locate missing or hard-to-find persons; evaluating incident scenes to gather factual evidence related to damage, loss, or injury; preparing for and providing litigation support; and participating in court proceedings. (Dkt. No. 19-2 at 45–50.)

The legislative history for the 2017 amendments to the licensure law[3] indicates that the California Legislature imposed licensing requirements on private investigators because they "play a unique role in that their job is to delve into an individual's personal information, history, and behavior" and they "have a unique ability [to] interact with consumers' sensitive information." (Dkt. No. 19-1 at 11.) But on the record before the Court, there is no evidence that Fink handles sensitive client information or that he is providing services beyond reviewing his clients' junk emails. The entirety of Fink's "investigation" is reading his clients' self-identified spam emails, which by definition are unlikely to contain any sensitive information, and

---

[3] In support of both their opposition to the preliminary injunction motion and their motion to dismiss, the defendants request that the Court take judicial notice of this legislative history. (Dkt. Nos. 18-1 & 19-1.) The requests for judicial notice, which Fink did not oppose, are granted. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice.").

compiling and creating PDFs of the emails that might violate California's anti-spam law. (Dkt. No. 15-1 ("Fink Decl.") ¶¶ 20, 24.) Fink avers that he does not conduct surveillance, investigate crimes done or threatened against the United States, attempt to locate lost or stolen property, investigate the causes of fires or other property damage, carry a weapon, or operate under a pseudonym. (*Id.* ¶ 27.) Moreover, Fink is not involved in any of the subsequent litigation that his clients may choose to pursue with their own attorneys (who have a duty of candor toward the courts), other than receiving a percentage of any recovery on a contingency basis. (*Id.* ¶¶ 25, 28.)

Licensing regimes will often require knowledge of areas not part of a licensee's specific practice. However, Fink's situation presents an extraordinary case. He is in a particularly unusual position because of the minimal overlap between his limited "investigative" activities and the full scope of private investigative conduct contemplated by the Legislature. Fink's business of reviewing inherently non-sensitive spam emails does not appear to implicate the Legislature's concerns about privacy and deceptive practices motivating the oversight of more traditional private investigators, despite that Fink's conduct technically falls within the scope of the licensure law. Requiring Fink to undertake 6,000 hours of training as, say, an arson investigator or investigative journalist is not rationally related to his capacity or fitness to read his clients' junk emails and identify the ones that may violate the anti-spam law. Accordingly, Fink is likely to succeed in showing that the private investigator licensure law as applied to him fails rational basis review.

### 2.     Irreparable Harm

The second element in the injunctive relief analysis is whether the plaintiff is likely to suffer irreparable harm in the absence of such relief. *See Winter*, 555 U.S. at 20. Because Fink has shown a likelihood of success of his claims for violation of his constitutional rights for the reasons set forth above, he has established a likelihood of irreparable harm. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*,

427 U.S. 347, 373 (1976)).

### 3. Balance of Equities and Public Interest

For the remaining two factors, the Court must balance the equities of the parties and consider the public interest to determine whether an injunction is appropriate. Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)).

The hardships that Fink would face if the preliminary injunction were denied are much more serious than the temporary hardship the defendants would endure if the injunction were granted. Fink has already closed his business as a result of the defendants' citation order, and he would continue suffer a loss of income and harm to his business if the injunction were denied. (Fink Decl. ¶¶ 56–59.) The defendants contend that they have an interest in "ensuring [Fink's] competency to conduct his business appropriately and in protecting the public." (PI Opp. at 20.) However, Fink declared that he had never received a complaint from any of his clients regarding his services in the twelve years that he operated Spam Private Eye (Fink Decl. ¶ 31), and the defendants have not offered any evidence to the contrary. Furthermore, as Fink has demonstrated a likelihood of success on the merits, "the public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Melendres*, 695 F.3d at 1002 (9th Cir. 2012)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

### 4. Bond Requirement

A court may grant preliminary injunctive relief "only if the movant gives security in an

amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citations and internal quotation marks omitted). In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Here, the defendants have not requested the imposition of a bond, and for the reasons stated above in the discussion of competing hardships, the Court finds that the preliminary injunction will not result in a realistic likelihood of harm to the defendants, and no security bond from Fink will be required.

### B. The Defendants' Motion to Dismiss

Finks asserts that the defendants violated his constitutional rights under the First Amendment and the Fourteenth Amendment's Due Process, Equal Protection, and Privileges or Immunities Clauses. The defendants move to dismiss the complaint for failure to state a claim. The motion to dismiss is granted as to Fink's claims under the Equal Protection Clause and the Privileges or Immunities Clause and is otherwise denied.

#### 1. First Amendment and Substantive Due Process

Fink has plausibly stated claims that the private investigator licensure law as applied to him violates his First Amendment free speech rights and Fourteenth Amendment substantive due process rights for the reasons described above. The motion to dismiss those two claims is denied.

#### 2. Equal Protection

As Fink does not claim to be a member of a suspect class, rational basis review applies to his equal protection claim. Fink alleges that there is no rational reason to require him to be licensed as a private investigator when others who read and convey information from emails

(like personal assistants and secretaries) may be unlicensed.  (Compl. ¶¶ 106–11.)  He contends that it is irrational to treat him differently merely because he is accessing and securing those emails as evidence for potential litigation.  (*Id.*)

A statutory classification fails rational basis review only when it "rests on grounds wholly irrelevant to the achievement of the State's objective."  *Heller v. Doe by Doe*, 509 U.S. 312, 324 (1993).  Fink's allegations do not meet that standard.  California imposes a licensing regime on private investigators to guard against deceptive practices, protect privacy, and ensure the reliability of evidence and integrity of the judicial system.  (Dkt. No. 18 ("MTD") at 8.)  Distinguishing between those who review emails to secure evidence for use in court and those who review emails for other reasons is not wholly irrelevant to those interests.  A secretary who reads their boss's emails is doing work that does not implicate the integrity of evidence in court.  Moreover, unlike a private investigator hired to investigate a potential legal claim, a personal assistant is unlikely to have a financial incentive to be overzealous in their review of private communications, intrude upon a subject's privacy, or engage in deceptive tactics to gain potentially incriminating information.  The Legislature did not act irrationally in drawing a distinction between those who read others' communications for investigations and those who read them for other purposes.

Although rational basis review applies to both Fink's equal protection claim and his substantive due process claim, the outcomes are divergent because each challenges the licensing scheme on a different basis.  Unlike his equal protection claim, his substantive due process claim is based on the allegation that his review of spam emails is "so different from conventional private investigations that any government's interest in regulating private investigators is not implicated."  (Compl. ¶ 96.)  That allegation states a valid claim, whereas the distinction challenged in his equal protection claim does not.  *See Merrifield v. Lockyer*, 547 F.3d 978, 985 (9th Cir. 2008) ("While the reasoning of the district court in *Cornwell* [invalidating a cosmetology licensing requirement as applied to hair braiders] may be consistent with our due process analysis, it cannot survive equal protection analysis.").  The motion to dismiss Fink's

equal protection claim is granted. As the Court cannot say that amendment would be futile at this time, dismissal is with leave to amend.

### 3. Privileges or Immunities

Fink claims that the defendants are violating the Privileges or Immunities Clause of the Fourteenth Amendment by barring him from operating his business without a private investigator's license. (Compl. ¶¶ 113–14.) As Fink concedes (*id.* ¶ 116), this claim is foreclosed by the Supreme Court's decision in *Slaughter-House Cases*, 83 U.S. 36 (1872). Therefore, this claim is dismissed without leave to amend.

## IV. CONCLUSION

Based on the foregoing, it is hereby ordered that:

1. Fink's motion for a preliminary injunction is **GRANTED** as follows:

    (a) The defendants and their agents, employees, and successors in office are **ENJOINED** from enforcing the private investigator licensing requirement under Cal. Bus. & Prof. Code § 7521 against Fink during the pendency of this case unless otherwise ordered by the Court; and

    (b) This preliminary injunction shall issue without the requirement of a security bond.

2. The defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** The motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND** as to the Privileges or Immunities claim, **GRANTED WITH LEAVE TO AMEND** as to the equal protection claim, and is otherwise **DENIED**. **Within thirty days from the date of this order**, Fink shall file either (1) an amended complaint correcting the deficiencies identified in this order or (2) a statement that he wishes to proceed on the initial complaint. Failure to do so may result in the dismissal of this action for failure to prosecute. *See* Fed. R. Civ. P. 41(b). Responses to the operative complaint are due **twenty-one days** from the date of Fink's filing.

**IT IS SO ORDERED.**

Dated: March 13, 2024

_____<br>
RITA F. LIN<br>
United States District Judge

17